# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ASCENT CHIROPRACTIC LLC, a Wisconsin limited liability company, individually and as the representative of a class of similarly situated persons and entities,

Plaintiff,

v.

SIMONMED IMAGING MSO, LLC,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 25-C-1711

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, ASCENT CHIROPRACTIC LLC ("Plaintiff"), through undersigned counsel, brings this action on behalf of itself and all other persons and entities that were sent one or more unsolicited advertisements by facsimile transmission from defendant, SIMONMED IMAGING MSO, LLC ("Defendant"). Plaintiff makes the following allegations based on personal knowledge with respect to facts known to Plaintiff and otherwise on information and belief after reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1. On behalf of itself and a class of all others similarly situated, Plaintiff alleges claims and seeks statutory damages and other relief arising from Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2. The TCPA prohibits sending any "unsolicited advertisement" by fax. 47 U.S.C. § 227 (b)(1)(C).

3. The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

4. Attached as Exhibit A is a true and correct copy of a May 14, 2025, communication received on Plaintiff's fax machine.

5. Exhibit A advertises the commercial availability or quality of Defendant's property, goods, or services. 47 U.S.C. § 227(a)(5).

6. Among other things, Exhibit A states, "Get $100 Off a Life-Saving MRI Scan!" and provides a "Promo Code … to redeem your discount."

7. Defendant, or some person or entity acting on its behalf, sent Exhibit A by facsimile transmission to 262-753-6908, the number of Plaintiff's telephone facsimile machine (Plaintiff's "fax number").

8. Defendant did not have Plaintiff's prior express invitation or permission to send Exhibit A or any other advertisement by fax.

9. The TCPA provides a private right of action and statutory damages of at least $500 per violation. 47 U.S.C. § 227(b)(3). If the Court finds an advertiser violated the Act knowingly or willfully, the Court may increase the award to as much as $1,500 per violation. The Court may also grant injunctive relief.

10. On behalf of itself and all others similarly situated, Plaintiff brings this action seeking statutory damages and other relief for each of Defendant's violations of the TCPA occurring within the four years before this action was commenced and

continuing until the Court directs notice to the class.

## THE PARTIES

11.     Plaintiff, ASCENT CHIROPRACTIC LLC, is a Wisconsin limited liability company operating the healthcare practice of Dr. Grant Radermacher, DC, at 16620 W Bluemound Rd #405, Brookfield, WI 53005.

12.     Defendant, SIMONMED IMAGING MSO, LLC, is a Delaware limited liability company with its principal place of business in Scottsdale, Arizona. Defendant is authorized to do business in Wisconsin, where its registered agent for service of process is CT Corporation System, 301 S Bedford St Ste 1, Madison, WI 53703.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

14.     Personal jurisdiction exists over Defendant in Wisconsin because it has committed tortious act in the State by causing the transmission of unlawful communications to Plaintiff and other Wisconsin residents, or because Defendant transacts business in and makes or performs contracts substantially connected with the State.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff received Defendant's unsolicited fax advertisement in this District, and a substantial part of the events giving rise to the claim occurred here.

3

## FACTS

16. On information and belief, Defendant is responsible for managing marketing, scheduling, and other centralized business operations for the SimonMed network of diagnostic-imaging centers nationwide.

17. On or about May 14, 2025, Plaintiff received an unsolicited advertisement sent to its fax number. A true and correct copy of the document received on Plaintiff's fax machine is attached as Exhibit A.

18. Defendant's fax header (top of Exhibit A) states that it was sent just after midnight on May 14, 2024. Exhibit A ("2025/05/14 00:54:49").

19. Exhibit A displays Defendant's registered trademark, "SIMONONE."

20. Exhibit A advertises the commercial availability or quality of Defendant's services.

21. Exhibit A contains no opt-out notice.

22. Exhibit A states, "Honoring Healthcare Heroes … Get $100 Off a Life-Saving MRI Scan!"

23. Exhibit A states, "SimonMed is proud to support those who dedicate their lives to patient care. As a token of our appreciation, we are offering **a $100 discount on our simonONE Whole-Body MRI scans for all healthcare professionals.**"

24. "Who is Eligible? This offer is available to all individuals working in the healthcare industry, including doctors, nurses, medical assistants, support staff and more."

25. Exhibit A states, "Limited-Time Offer: May 1 - July 31. 2025. Use Promo Code: HealthcareHero2025 to redeem your discount."

26. Exhibit A provides a website ("simonONE.com"), a QR code (that takes a user to https:www.simonone.com), and a phone number ("SCHEDULE TODAY! Call us: 877-653-3558) that may be used to obtain more information and schedule a paid service from SimonMed Imaging.

27. Exhibit A provides price information: "simonONE WHOLE-BODY MRI PREVENTATIVE SCANS" are available for either $650 ("Body") or $1,250 ("Body Plus").

28. The website referenced on Exhibit A advertises simonONE scans for those prices. https://www.simonmed.com/services/simonone/ ($650 for "simonONE Body" and $1,250 for "simonONE Body Plus") (last visited 11/03/2025).

29. The website referenced on Exhibit A currently offers $50 off to any consumer who chooses to sign up for a simonONE scan. https://www.simonone.com ("Sign up now to unlock an exclusive discount on simonONE's proactive scan—designed to catch early health risks and help you stay healthier, longer.") (last visited on 11/03/2025).

30. Defendant's website identifies and describes a wide variety of services available for purchase, including simonONE scans. https://www.simonmed.com/services/ (last visited on 11/03/2025).

31. Defendant did not have Plaintiff's prior express invitation or permission to send advertising material or Exhibit A to Plaintiff's fax number.

32. Fax transmissions are sent between ten-digit numbers assigned by the North American Numbering Plan Administrator ("NANPA")—from one number in the integrated North American Numbering Plan ("NANP") to another NANP number—using the Public Switch Telephone Network ("PSTN") and the ITU T.30 faxing protocol as regulated by the FCC. NANP numbers are ten-digit numbers consisting of a three-digit Numbering Plan Area code, commonly called an area code, followed by a seven-digit local number.

33. Unlike paper junk mail delivered to a USPS mailbox, unsolicited fax advertisements target recipients at their specific 10-digit fax numbers connected to special equipment purchased, leased, or otherwise maintained as a means of receiving fax communications.

34. Every unsolicited fax imposes incremental, per-page costs on its recipient. When automatically printed upon receipt, as in the case of Plaintiff, an unsolicited fax transmission uses and wastes the recipient's paper and ink toner. Even unprinted fax advertisements cause unnecessary expense. Printed or not, every unsolicited fax interrupts the recipient's privacy and seclusion, and wastes their valuable time, as somebody must view the sender's message to discern its source, purpose, or nature.

35. Plaintiff and the other class members have no obligation to take affirmative steps to try to avoid or prevent Defendant's unlawful facsimiles.

36. Plaintiff subscribes to and maintains a dedicated fax number through a paid commercial fax service, Dropbox Fax, which constitutes part of the fax

equipment and systems Plaintiff uses that have the capacity to receive electronic facsimile signals transmitted over regular telephone lines and transcribe those signals into printable form. (References in this Complaint to Plaintiff's "fax machine" refer to this fax equipment and systems.) Plaintiff does so to send and receive business-related facsimile communications, including confidential or urgent communications, not to receive unsolicited advertising material from Defendant or anyone else.

### CLASS REPRESENTATION ALLEGATIONS

37.     Plaintiff brings this action on behalf of itself and a class of all other persons and entities who were sent unsolicited advertisements within the last four years.

38.     The proposed class is defined as follows:

> All persons and entities who were sent a fax after November 2, 2021, offering a discounted price for a service from SimonMed Imaging.
>
> Excluded from the Class are Defendant, its officers and directors, employees, agents, and affiliates, and the judges to whom this case is assigned.

39.     Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if warranted—after discovery about Defendant's fax advertising practices.

40.     This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23. The action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. As required by Rule 23(b)(3), common

7

questions of law or fact predominate over any individual question, and a class action is the superior method to adjudicate this controversy.

## Numerosity/Impracticality of Joinder

41. On information and belief, the class includes more than 40 persons and, thus, is so numerous that individual joinder of its members is impracticable.

42. Exhibit A is a form solicitation, sent to one or more target lists, not addressed to any person, and offering a discount "to all individuals working in the healthcare industry, including doctors, nurses, medical assistants, support staff and more."

## Commonality

43. This case involves common questions of law and fact, including but not limited to the following:

   a. Whether Defendant sent "any material advertising the commercial availability or quality of property, goods, or services" to the telephone facsimile numbers of Plaintiff and the other members of the class;

   a. Whether Exhibit A—and other, similar documents sent by facsimile transmission—contained "material advertising the commercial availability or quality of property, goods, or services";

   b. Whether Defendant had "prior express invitation or permission" to fax advertising material to its intended recipients;

   c. Whether Defendant sent faxes in broadcasts and the manner and method used to obtain or compile the target list(s);

d.     Whether Defendant included on the first page of its fax advertisements a clear and conspicuous opt-out notice that complied with the TCPA's requirements;

e.     Whether Defendant is directly or vicariously liable for violating the TCPA;

f.     Whether Plaintiff and the other class members should be awarded $500 in statutory damages for each of Defendant's violations of the TCPA;

g.     Whether Defendant's actions were knowing or willful and, if so, whether the Court should treble the TCPA statutory damages awarded to Plaintiff and the class;

h.     Whether the Court should enjoin Defendant from sending future unsolicited advertisements by facsimile.

## Typicality

44.     Plaintiff's claims are typical of the claims of the other class members, as each was injured by the same wrongful conduct. Each class member was sent one or more unsolicited advertisements by facsimile transmission. If Plaintiff prevails on its claims, then the other class members will prevail as well.

## Adequacy of Representation

45.     Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel who are capable, competent, and experienced in class action litigation, including TCPA "junk

fax" class actions, and who will vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interests of the entire class.

## One or More Common Questions Predominate

46. The common questions about Defendant's unsolicited fax advertisements predominate over any questions affecting only individual members of the class. The common questions do not vary from one class member to another and may be determined without reference to the individual circumstances of any class member. Separate adjudication of class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if or when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendant chooses to advertise by fax again in the future.

## Superiority

47. A class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood of individual class members prosecuting separate these claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Relief concerning the rights of the entire class, including Plaintiff, would be proper. Individualized litigation would create the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. There is no other litigation pending regarding fax advertisements sent by Defendant. Plaintiff envisions no difficulty in the

10

management of this case as a class action. The class members and their statutory damages may be determined based upon information maintained by or available to Defendant.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

48. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

49. Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons and alleging claims under the TCPA.

50. At 47 U.S.C. § 227(b)(1)(C), the TCPA provides as follows:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

\* \* \*

(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through--

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

11

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

51. Defendant violated the TCPA by sending Exhibit A to Plaintiff's fax machine.

52. Exhibit A is an "unsolicited advertisement."

53. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

54. Exhibit A contains material advertising the commercial availability or quality of property, goods, or services.

12

55. Exhibit A was sent to Plaintiff's fax machine without Plaintiff's prior express invitation or permission.

56. Exhibit A was sent by Defendant or on Defendant's behalf.

57. At 47 U.S.C. § 227(b)(3), the TCPA provides a private right of action as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

58. Defendant violated the TCPA by faxing advertisements to Plaintiff and others without their prior express invitation or permission.

59. Exhibit A does not have an opt-out notice.

60. Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising.

61. The required content of an opt-out notice ensures that fax recipients know how to prevent and avoid future fax transmissions of advertising material and

provides the various cost-free means Congress required must be available 24/7 to submit opt-out requests.

62. Because Exhibit A has no opt-out notice, any "established business relationship" between Defendant and an intended fax recipient would be irrelevant to Defendant's defense in this action.

63. The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members regardless of whether its actions were negligent or well-intentioned.

64. Defendant is liable because it either sent the faxes, caused the faxes to be sent, or participated in the sending process. Further, the faxes were sent on Defendant's behalf, and Plaintiff alleges on information and belief formed after a reasonable investigation that Defendant gave actual authority or ratified the unlawful conduct.

65. Defendant knew or should have known that it did not have prior express invitation or permission to send advertisements by facsimile transmission.

66. Defendant's actions caused harm. Defendant's unsolicited fax advertisements invaded the privacy and right of seclusion otherwise enjoyed by Plaintiff and the other class members. These faxes caused Plaintiff and others to lose paper and toner consumed in printing Defendant's unsolicited advertisement. The faxes used their fax equipment and systems, increased their costs, and wasted valuable resources, including work time.

67. Plaintiff does not seek to recover for actual monetary loss. Rather, for itself and every other member of the class, Plaintiff seeks an award of statutory damages of $500 for each of Defendant's violations of the TCPA.

68. The Court, in its discretion, can increase the statutory damages to as much as $1,500 for each violation that was knowing or willful. 47 U.S.C. § 227(b)(3).

69. Plaintiff requests that the statutory damages be trebled under 47 U.S.C. § 227(b)(3), if the Court finds Defendant's violations of the TCPA were knowing or willful.

70. The Court also should enjoin Defendant from sending future unsolicited advertisements by fax without the prior express invitation or permission of the intended recipient or a compliant opt-out notice.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in their favor and against Defendant, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, certify a class, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class.

B. That the conduct alleged herein be declared to be in violation of the TCPA;

C. That the Court enter judgment against Defendant and in favor of Plaintiff and the class.

D. That the Court award $500.00 in statutory damages for each of Defendant's violations of the TCPA;

E.     That the Court treble the statutory damages if it concludes that Defendant's violations of the TCPA were willful or knowing;

F.     That the Court enter an injunction prohibiting Defendant from sending any advertising material by fax without first demonstrating that prior express invitation or permission has been obtained or that the document to be sent by fax transmission includes the opt-out notice required by the TCPA and the FCC's regulations;

G.     That the Court award to Plaintiff and the class the costs incurred in this lawsuit; and

H.     That the Court award all other relief allowed by law or equity that the Court deems just and proper.

Respectfully submitted,

Ascent Chiropractic LLC, individually and as the representative of a class of similarly-situated persons,

By:     /s/ David M. Oppenheim
          One of their attorneys

Phillip A. Bock
David M. Oppenheim
Barry J. Blonien
Jeffrey M. Berman
Bock Hatch & Oppenheim, LLC
203 N La Salle St Ste 2100
Chicago, IL 60601
Telephone: 312-658-5501
Email: service@classlawyers.com